IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CARMEN MICHELLE OXFORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 322-013 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner, an inmate at Tallahassee Federal Correctional Institution in Tallahassee, Florida, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. Respondent moved to dismiss the § 2255 motion. Despite receiving an extension of time to respond, (doc. no. 362), Petitioner did not do so, and the Court therefore deems the motion to dismiss as unopposed. See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 361), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 353), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I. **BACKGROUND**

A. **Indictment**

On October 5, 2022, the government charged Petitioner and twelve co-defendants in a twenty-seven-count indictment alleging an overarching conspiracy to possess with intent to distribute and to distribute controlled substances, including 100 grams or more of heroin and

fifty grams or more of methamphetamine. (See doc. no. 3.) The indictment named Petitioner in five of those counts, *i.e.*, conspiracy in count one, methamphetamine distribution in count twelve, and illegal firearm possession in counts thirteen, fourteen, and fifteen. (See id.) Petitioner faced ten years to life of imprisonment, with a possible mandatory and consecutive five years for the firearm charge in Count Thirteen. (See doc. no. 4.) The Court appointed attorney Johnny Vines to represent Petitioner. (See doc. no. 44.)

**B.    Guilty Plea**

Pursuant to a written plea agreement, Petitioner pled guilty to the lesser included offense of count twelve, possession with intent to distribute fifty grams of more of methamphetamine. (See doc. no. 154 ("Plea Agreement").) In exchange, the government agreed to: (1) move for an additional one-point reduction under the Sentencing Guidelines if the Court determined Petitioner qualified for a two-point acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a), and Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; (2) recommend Petitioner be sentenced at the low end of the Guidelines range as determined by the Court at sentencing; (3) recommend to the U.S. Probation Office and the Court at sentencing that, for purposes of U.S.S.G. § 2D1.1, the offense involved at least fifty, but less than 150, grams of methamphetamine; and, (4) move to dismiss at sentencing all other Counts of the indictment pending against Petitioner. Id. at 3-4. The parties also agreed that, for the purposes of calculating Petitioner's offense level only, she should not receive a two-level increase in offense level for possession of the firearm recovered in the car in which she had been traveling at the time of her arrest on April 14, 2022. Id. at 4; doc. no. 359 ("Rule 11 Tr."), pp. 10-11.

Notably, however, the plea agreement also specifically explained, "The Court is not bound by any estimate of sentence given or recommendation made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else." Plea Agreement, p. 2. The plea agreement further stated the Court could impose a sentence up to the statutory maximum, which was identified as not more than twenty years in prison. Id. Furthermore, the plea agreement specifically delineated that no one had "promised [Petitioner] that the Court will impose any particular sentence or a sentence within any particular range." Id.

Petitioner's plea agreement contained the following factual basis for her guilty plea:

> On or about April 14, 2022, in Laurens County, within the Southern District of Georgia, the defendant, **CARMEN MICHELLE OXFORD**, being aided and abetted by another, did possess with the intent to distribute a quantity of methamphetamine (ICE), a Schedule II controlled substance in violation of Title 21, United States Code, Section 841.

Id. With her signature on the plea agreement, Petitioner agreed she read and carefully reviewed it with Mr. Vines, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 11.

By signing the plea agreement, Petitioner agreed to "entirely waive[] her right to a direct appeal of her conviction and sentence on any ground" unless the Court (1) sentenced her above the statutory maximum, (2) sentenced her above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6-7. Further, Petitioner waived her right to collaterally attack her conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 7. By signing the plea agreement, Petitioner additionally attested to her belief "that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice given and the work performed by her attorney." Id. at 8.

3

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr., found Petitioner was competent to enter a guilty plea if she so desired. Rule 11 Tr. 5. Petitioner testified under oath she had sufficient time to discuss her case with Mr. Vines. Id. When Judge Bowen asked Petitioner, "[A]re you entirely satisfied with Mr. Vine[s]'s preparation and his handling of your case?" Petitioner answered, "Yes, sir." Id. Judge Bowen reviewed the drug charge to which Petitioner was pleading guilty and the maximum prison term of twenty years. Id. at 5-7, 9-10.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to be present in the courtroom during a trial, the right to present, confront, and cross-examine witnesses, and the right to remain silent. Id. at 8-9. The plea agreement Petitioner signed also delineates the rights she waived by pleading guilty. Plea Agreement, p. 8. Judge Bowen additionally reminded Petitioner she was entitled to persist with her not guilty plea entered at arraignment, and no one could make Petitioner change that plea. Rule 11 Tr. 8.

Further, Judge Bowen asked Petitioner whether she had been forced, threatened or pressured into pleading guilty, to which she responded, "No, sir." Id. at 9. Judge Bowen confirmed that, other than the promises the government made in the plea agreement, no one had made her any promises in order to get her to plead guilty; Petitioner affirmed that no one had given her any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 12. Particular to the Guidelines calculation, Judge Bowen reviewed the portion of the plea agreement in which the government and defense counsel agreed that Petitioner should not

4

receive a two-level increase to the offense level based on the firearm recovered on April 14, 2022, at the time of Petitioner's arrest, but he specifically cautioned that agreement was made between the parties and would not necessarily be accepted by the Court:

> The government lawyer and your lawyer have agreed that for the purposes of calculating the offense level only that you will not receive a two-level increase or enhancement in your offense level on account of possession of a firearm that was recovered on April 14, 2022. Y'all have made that agreement. We'll see about it whether probation can go along with that and whether the Court can go along with it.

Id. at 10-11.

Judge Bowen also confirmed the parties had agreed the drug quantity used to calculate the Guidelines sentence involved at least fifty grams but less than 150 grams of methamphetamine in its ice configuration. Id. at 11. In addition, Judge Bowen reviewed the appeal waiver with its limited exceptions, as well as the collateral attack waiver. Id. Petitioner confirmed her understanding of the plea agreement. Id. at 12.

Judge Bowen then heard a factual basis for the guilty plea from Task Force Officer ("TFO") Timothy Burriss with the Drug Enforcement Agency ("DEA") Savannah Office. TFO Burriss explained a traffic stop was conducted on April 14, 2022, on a vehicle driven by co-defendant Gerald Downard in which Petitioner was a passenger. Id. at 13. Upon smelling a strong odor of marijuana coming from the vehicle, and in light of an active DEA investigation, a K-9 sniff was conducted and resulted in an alert. Id. at 13-14. A search of the vehicle revealed scales, plastic baggies, approximately five ounces of methamphetamine that field tested positive and was subsequently tested at a DEA lab as approximately 122 grams of methamphetamine, with an approximate purity of 80 percent. Id. On cross-examination, TFO Burriss clarified the drug purity was 83 percent, plus or minus six percent. Id. at 15.

With respect to the firearm the parties agreed would not trigger a two-level increase, TFO Burriss explained the firearm had been located on the driver's side of the vehicle, and co-defendant Downard stated he knew about the firearm and placed it in the vehicle for his purposes. Id. Mr. Vines elicited testimony from TFO Burriss on cross-examination he had no knowledge of Petitioner making any statement regarding the firearm. Id. at 15-16.

Upon conclusion of TFO Burriss's testimony, Petitioner confirmed she had no disagreement with the factual basis provided, adding, "Yes, sir. They pulled us over and they did catch us with some methamphetamine. So, I mean, it's the truth." Id. at 16. Petitioner further confirmed she was guilty of, and wanted to plead guilty to, the lesser included offense of count twelve, consistent with the terms of her plea agreement. Id. at 16-17.

### C.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-nine, Criminal History Category at I, and a Guidelines imprisonment range of 87 to 108 months. (Doc. no. 193, ("PSI") ¶¶ 27, 59.) The offense level was calculated based on DEA laboratory analysis of 122.07 grams of methamphetamine hydrochloride with a minimum purity level of 77 percent for a total of 93.99 grams of methamphetamine (actual), which means the base offense level for Guideline purposes involved at least fifty grams, but less than 150 grams, of methamphetamine (actual). PSI ¶¶ 12, 18. Rejecting the agreement Petitioner should not receive a two-level increase for possession of a firearm, the PSI applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), but there was a three-level reduction applied for acceptance of responsibility. PSI ¶¶ 19, 25-26. Neither Petitioner nor the government raised objections to the PSI. PSI, p. 19 ("PSI Addendum"); doc. no. 360, ("Sent. Tr."), p. 2.

At the June 8, 2023 sentencing, Judge Bowen confirmed Petitioner and Mr. Vines had reviewed the PSI and had no outstanding objections.  Sent. Tr. 2-3.  Hearing no objections from either side, Judge Bowen adopted the factual statements in the PSI, as well as the conclusions contained therein, as his own.[1]  Id. at 3.  Thus, the advisory Guidelines range was 87 to 108 months of imprisonment.  Id.

Prior to imposition of sentence, Mr. Vines explained to Judge Bowen this was one of the few cases that U.S. Probation, the government, and the defense had all agreed to ask the Court to adopt the recommended sentence in the PSI of 87 months with the additional recommendation for drug treatment while incarcerated.  Id. at 3.  Mr. Vines further explained Petitioner had been willing to testify against co-defendants and had no major problems with the law for almost fourteen years after her parole in 2006 until she became involved with co-defendant Downard and again began her involvement with drugs.  Id. at 4.  Petitioner apologized to the Court and joined in the request for an 87-month sentence.  Id. at 4-5.  In addition to a term of supervised released and a fine, Judge Bowen sentenced Petitioner to 87 months in prison and recommended her for the Residential Drug and Alcohol Treatment Program.  Id. at 5-9.  Before adjourning the sentencing, Judge Bowen again asked both defense counsel and the government whether there were "any objections to the Court's findings of fact, conclusions of law or the manner in which the sentence was imposed?"  Id. at 9.  Both the defense and the government responded in the negative.  Id.

---

[1]At sentencing, facts not objected to in the PSI are deemed admitted.  See United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006) (*per curiam*).

### D.    Post-Conviction

In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal. On the same day as sentencing, Mr. Vines and Petitioner signed a post-conviction consultation certification in which they both attested that Petitioner decided not to file an appeal after Mr. Vines (1) explained to Petitioner the appeal process, including the right to a direct appeal, (2) advised Petitioner about the advantages and disadvantages of pursuing an appeal, and (3) inquired of Petitioner whether she wanted to file an appeal.  (Doc. no. 229.)

On January 8, 2024, Petitioner motioned for a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(2) "in light of retroactive effect of amendment criminal history 'status' points."  (Doc. no. 334.)  Judge Bowen dismissed that motion without prejudice because the Court was not permitted to order the sentence reduction until February 1, 2024 or later, but observed that a cursory review of Petitioner's case shows she was not assessed any criminal history points.  (Doc. no. 338, pp. 1-2.)  "Thus, it appears Amendment 821 would afford her no relief."  (Id. at 2.)  On March 25, 2024, Petitioner again requested a reduction in sentence based not only "status points" but also as a "zero-point offender."[2]  (Doc. no. 348.)  That motion is pending before Judge Bowen.

### E.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct her sentence, raising the following four ineffective assistance of counsel claims:

---

[2]Under U.S.S.G. § 4C1.1, a defendant may have her offense level under Chapters Two and Three reduced by two levels if she meets certain criteria, including as relevant here, she did not receive any criminal history points and "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm of other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. § 4C1.1(a)(1) & (7).

     (1)      Counsel failed to challenge the drug purity of the methamphetamine Petitioner admitted possessing with the intent to distribute;

     (2)      Counsel failed to challenge the two-point enhancement for possession of the firearm recovered on April 14, 2022, for which Petitioner's co-defendant admitted ownership;

     (3)      Counsel failed to produce and review discovery with Petitioner; and

     (4)      Counsel did not conduct an adequate, independent pretrial investigation.

(See generally doc. no. 353.)  Petitioner's motion does not ask to vacate her conviction or otherwise withdraw her guilty plea; rather she seeks only a lower sentence.  (Id. at 12.)

On May 2, 2024, Respondent filed a motion to dismiss, contending Petitioner's claims fail on the merits, are impermissibly conclusory, or are otherwise barred by her knowing and voluntary guilty plea.  (See generally doc. no. 361.)  Although she received an extension of time to respond, (doc. no. 362), Petitioner did not file any opposition to the motion dismiss.

## II.  DISCUSSION

### A.  No Evidentiary Hearing Required

Petitioner requests a hearing on her § 2255 motion.  (Doc. no. 353, p. 12.)  However, § 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a hearing is not required "if the allegations are affirmatively contradicted by the record."  Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (citations omitted).

Stated otherwise, a petitioner is not entitled to an evidentiary hearing where she asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Rather, a petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle [her] to relief." Griffith v. United States, 871 F.3d 1321, 1329 (11th Cir. 2017). Because Petitioner's claims are barred by her valid plea agreement, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). It is not enough to show ignorance of the law. Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471,

1481-82 (11th Cir. 1997). "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Id. The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that [s]he is in fact guilty of the offense with which [s]he is charged, [s]he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. [S]he may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson], 397 U.S. 759 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see

<u>also</u> <u>Carter v. United States</u>, 288 F. App'x 648, 649 (11th Cir. 2008) (*per curiam*).  Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  <u>Wofford</u>, 748 F.2d at 1508.  Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  <u>Chandler</u>, 218 F.3d at 1317.  "A tactical decision is ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  <u>Davidson v. United States</u>, 213 F. App'x 769, 770 (11th Cir. 2007) (*per curiam*) (citation omitted).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."  <u>McMann</u>, 397 U.S. at 770.

The Supreme Court described at length the impact of a guilty plea on the <u>Strickland</u> deficiency analysis in <u>Premo v. Moore</u>, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty.  Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."  <u>Id.</u>  Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."  <u>Id.</u> at 124.  Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered."  <u>Id.</u> at 126.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." <u>Chandler</u>, 218 F.3d at 1316; <u>see also</u> <u>Waters</u>, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697; <u>see</u> <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of <u>Strickland</u>, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly

harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. The prejudice determination is not based on whether a petitioner would have ultimately prevailed on the specific issues underlying the ineffectiveness claim, "but instead on whether [a petitioner] would have pleaded guilty had counsel's performance not been deficient." Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). In particular, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Thus, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable

probability that but for counsel's errors, she would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

### C.    Petitioner Is Not Entitled to Relief on Any of the Pre-Plea Ineffective Assistance Claims in Grounds Three and Four

Petitioner asserts Mr. Vines provided ineffective assistance in the pre-plea phase of the case when he failed to:  (a) produce and review all evidence with her; and (b) conduct an adequate and independent pretrial investigation.  These claims are barred by entry of a valid guilty plea, and in any event are devoid of merit.

### 1.    Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Grounds Three and Four

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into her plea, if a defendant does not understand the nature of the constitutional protections she is waiving, or "if a defendant has such an incomplete understanding of the charge that h[er] plea cannot stand as an

intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters h[er] guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of h[er] plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted). In addition, "a defendant who seeks reversal of h[er] conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], [s]he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Bowen's Colloquy with Petitioner Satisfied the Core Principles

Judge Bowen informed Petitioner in clear terms of the charge to which she was pleading guilty, and Petitioner testified she understood the charge and what the government would have to prove in order to convict her. Rule 11 Tr. 5-7. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed she understood his decision to plead guilty would result in a waiver of these rights. Id. at 8-9. Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get her to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 9, 12. Petitioner affirmed that no one had given her any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 12. Judge

Bowen also reviewed the portion of the plea agreement in which the government and defense counsel agreed that Petitioner should not receive a two-level increase to the offense level based on the firearm recovered on April 14, 2022, at the time of Petitioner's arrest, but he specifically cautioned that agreement was made between the parties and would not necessarily be accepted by the Court.  Id. at 10-11.  Judge Bowen also confirmed the parties had agreed the drug quantity used to calculate the Guidelines sentence involved at least fifty grams but less than 150 grams of methamphetamine in its ice configuration.  Id. at 11.

Additionally, Judge Bowen informed Petitioner of the possible penalty she faced upon conviction.  In particular, Judge Bowen confirmed Petitioner understood the maximum penalty of twenty years in prison, not less than three years of supervised release, a $1,000,000 fine, and a $100 special assessment for the charge to which she was pleading guilty.  Id. at 9-10.  Petitioner also testified she had enough time to discuss the case with Mr. Vines and was entirely satisfied with counsel's preparation and handling of her case.  Id. at 5; see also Plea Agreement, p. 8 ("Defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice given and the work performed by her attorney.").  Despite multiple opportunities, Petitioner expressed no hint of dissatisfaction with Mr. Vines when she appeared before Judge Bowen.

At the Rule 11 hearing, Petitioner also admitted to the facts presented by proffer from the government as the factual basis for the plea.  Rule 11 Tr. 13-16.  This proffer included information concerning Petitioner's presence as a passenger in the vehicle in which law enforcement found scales, plastic baggies, and about five ounces of methamphetamine which tested at an approximate purity of eighty percent at a DEA lab.  Id. at 13-14; see also Plea Agreement, p. 4 (delineating stipulation that "offense involved at least 50 grams but less than

150 grams of methamphetamine (ICE)"). Judge Bowen also specifically requested testimony from TFO Burriss about the presence of a firearm in the vehicle in which Petitioner was a passenger and from which the drugs had been recovered. Id. at 15. There was no testimony about whether Petitioner knew about the firearm, only that she made no statements about it and the co-defendant claimed it. Id. at 15-16. Judge Bowen confirmed Petitioner wanted to plead, and was in fact, guilty of the lesser included offense of the count twelve drug offense. Id.

Thus, Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of her guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea.

In sum, Petitioner has not shown a reasonable probability that but for any alleged error at the Rule 11 proceeding she would not have entered her guilty plea. See Dominguez Benitez, 542 U.S. at 83. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, [s]he bears a heavy burden to show h[er] statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that [s]he swore falsely"). Indeed, in her requested relief, Petitioner does not ask to withdraw her guilty but instead seeks only a new sentence. (Doc. no. 353, p. 12.) As Petitioner's plea was knowing and voluntary, her claims in Grounds Three and Four are barred.

18

Nevertheless, because Petitioner alleges constitutionally ineffective assistance from Mr. Vines led to the entry of her guilty plea, the Court addresses the merits of Petitioner's Grounds Three and Four claims below.  See, e.g., Wofford, 748 F.2d at 1508 (explaining "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by h[er] plea" (citations omitted)).

> **3.    Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit**

In Grounds Three and Four, Petitioner claims Mr. Vines did not produce and review all evidence with her, as well as failed to conduct an adequate and independent pretrial investigation.   Most difficult for Petitioner to overcome is her prior sworn assertions to Judge Bowen she had enough time to discuss the case with Mr. Vines and was entirely satisfied with his preparation and handling of the case.  Rule 11 Tr. 5; see also Plea Agreement, p. 8.  These sworn assertions contradict her current claims of dissatisfaction with the preparation by, and her interaction with, Mr. Vines prior to the guilty plea proceedings.

Even now Petitioner offers no particularized information about any potential defense or exculpatory evidence and fails to specify information conveyed to Mr. Vines that was not investigated.  Such conclusory allegations will not suffice.  See Hittson v. GDCP Warden, 759 F.3d 1210, 1271 (11th Cir. 2014) (rejecting generalized claims of ineffective assistance based on insufficient investigation where petitioner failed to identify additional necessary investigatory steps, mitigating evidence, or change to case outcome based on undiscovered evidence).  Petitioner asserts she had questioned the validity of the traffic stop from which the charges arose, but she does not identify the "probable cause issues" she alleges to have brought

to Mr. Vines's attention, let alone give any suggestion of a viable argument to challenge the traffic stop. (Doc. no. 353, p. 8.)

Moreover, Petitioner cannot meet the difficult standard for ineffective assistance of counsel, discussed in detail in Part II(B), because she has not suggested, let alone established, she would not have taken the benefit of the plea agreement and instead insisted upon going to trial. Petitioner has not identified any evidence of which she was not aware to support her claim that Mr. Vines did not review all of the evidence with her, let alone explain how any such evidence would have caused her to go to trial rather than plead guilty, changed the outcome of the case, or made a difference to her sentence. This is particularly true in light of Petitioner's attestation of guilt at the Rule 11 proceedings. Petitioner has shown neither deficient performance nor prejudice.

In sum, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal." Harris v. United States, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), *adopted by*, 2011 WL 1740306 (S.D. Ga. May 5, 2011). Petitioner is not entitled to relief on either of her claims in Grounds Three and Four.

### D. Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Grounds One and Two

Petitioner also asserts Mr. Vines provided ineffective assistance at sentencing when he failed to: (a) challenge the drug purity of the methamphetamine Petitioner admitted possessing with the intent to distribute; and (b) challenge the two-point enhancement for possession of the firearm recovered on April 14, 2022, from the car in which Petitioner was traveling just prior to her arrest and which co-defendant Downard claimed ownership.

At sentencing, Judge Bowen confirmed Petitioner had reviewed the PSI.  Sent. Tr. 2-3. Judge Bowen also asked if there were any objections, to which both the government and the defense confirmed there were not.  Id.; PSI Addendum.  Prior to imposition of sentence, Mr. Vines explained to Judge Bowen this was one of the few cases that U.S. Probation, the government, and the defense had all agreed to ask the Court to adopt the recommended sentence in the PSI of 87 months with the additional recommendation for drug treatment while incarcerated.  Id. at 3.  Petitioner apologized to the Court and joined in the request for an 87-month sentence.  Id. at 4-5.  When given the chance to speak directly to Judge Bowen at sentencing, Petitioner never mentioned any issues about the information in the PSI or the calculation of her Guidelines sentencing range.  Id.

Petitioner argues, without benefit of any detail, that Mr. Vines should have challenged the purity of the methamphetamine mixture attributed to her.  There is no explanation what purity level should have been used for sentencing or how any such different purity level would have resulted in a change to her sentence.  (See doc. no. 353, p. 4.)  This is a particularly glaring omission in light of the stipulation in the plea agreement that "the offense involved at least 50 grams but less than 150 grams of methamphetamine (ICE)."  Plea Agreement, p. 4.  Moreover, drug quantity and purity were specifically addressed at the change of plea proceedings, with Mr. Vines specifically cross-examining TFO Burriss about his testimony on drug purity.  Rule 11 Tr. 11 (discussing stipulated drug quantity "in its ice configuration" as part of plea agreement); id. at 14, 15 (discussing drug purity as tested at DEA laboratory at approximately eighty percent; see also PSI ¶ 12 (explaining DEA laboratory analysis confirmed 122.07 grams of methamphetamine hydrochloride had minimum purity level of seventy-seven percent for a total of 93.99 grams of actual methamphetamine, within the stipulated amount for plea

agreement).  U.S.S.G § 2D1.1(c)(5) provides for a base offense level of 30, as was assigned to Petitioner (PSI ¶ 18), for at least fifty grams but less than 150 grams of actual methamphetamine or at least fifty grams but less than 150 grams of "ice"; Petitioner has not offered any facts to support a contention the true amount of drugs was less than fifty grams such that there would be any difference in her sentence calculation.

Moreover, Petitioner provides no information in support of her contention she was the only individual in the multi-defendant case "charged with and sentenced according to a pure substance," (doc. no. 353, p. 4), let alone how any of the charges and/or sentences of her co-defendants have anything to do with the terms of the plea agreement to which she knowingly and voluntarily agreed.  Co-defendant Downard, in the vehicle with her when she was arrested, had the same quantity and purity of methamphetamine attributed to him, (doc. no. 277, ¶ 12)

As to Petitioner's claim regarding the two-level enhancement for possession of a weapon, that, too, fails.  Judge Bowen specifically explained at the guilty plea proceedings that the Court was not bound by the agreement between the government and the defense that Petitioner should not receive the enhancement:  "Y'all have made that agreement.  We'll see about it whether probation can go along with that and whether the Court can go along with it." Rule 11 Tr. 11.  Thus, while Mr. Vines negotiated an agreement with the government, the PSI did "go along with that."  PSI ¶ 19.  Neither did Judge Bowen.

As U.S.S.G.  § 2D1.1(b)(1) explains, the enhancement applies if a firearm was "possessed."  Application Note 11(A) to  U.S.S.G. § 2D1.1 states, "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."

The enhancement applies if the government establishes by a preponderance of the evidence "either (1) that a 'firearm was present at the site of the charged conduct,' or (2) 'that the defendant possessed a firearm during conduct associated with the offense of conviction.'" United States v. Montenegro, 1 F.4th 940, 946 (11th Cir. 2021) (citation omitted). Although the government must show a nexus between the firearm and the drug crime, it is not required to prove the firearm was used in the facilitation of drug distribution but rather the "mere presence [of the firearm] during the drug offense is sufficient." Id. In other words, "[e]vidence of 'proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1).'" Id. (citation omitted). Once the government meets its initial burden, then the defendant must shoulder the heavy burden of showing "that a connection between the weapon and the offense was clearly improbable." Id. (citing United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).

Here, Petitioner stakes her claim of an improper enhancement to co-defendant Downard's claim of ownership of the weapon. (Doc. no. 353, p. 5.) However, as explained above, possession – not ownership – is the key. The record establishes the firearm was present at the site of the charged conduct in the vehicle in which Petitioner was a passenger, along with scales, plastic baggies and drugs. Rule 11 Tr. 14-15. Petitioner asserts, without any supporting evidence, "[t]here is no reasonable proof" she had knowledge her co-defendant possessed the firearm in the vehicle in which she was a passenger. (Doc. no. 353, p. 5.) This conclusory statement does not satisfy Petitioner's heavy burden of showing a connection between the firearm and the drugs in the vehicle was clearly improbable, and is at odds with the uncontested facts in the PSI and TFO Burriss's testimony at the change of plea proceedings

regarding the presence of drugs, drug paraphernalia, and a weapon at the site of the conduct to which Petitioner pleaded guilty.  PSI ¶ 8; Rule 11 Tr. 14-15.

As the evidence supports application of the enhancement, Petitioner fails to show deficient performance in Mr. Vines choosing not to raise a meritless objection.  Judge Bowen specifically cautioned Petitioner he was not bound by the agreement between the government and the defense, Rule 11 Tr. 10-11, and there was no valid objection to be made that Petitioner did not qualify for application of the enhancement.  Counsel cannot be ineffective for failing to raise a meritless claim.  See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).  Moreover, Mr. Vines explained this case was one of the few cases where U.S. Probation, the government, and the defense had all agreed on the recommended sentence in the PSI of 87 months.  The Court will not second guess the tactical decision not to object to the weapon enhancement used to calculate a sentence that could be presented to Judge Bowen with unanimous consent.

In sum, all of the ineffective assistance claims based on the performance of Mr. Vines at sentencing fail.  As detailed above, they are either based on an incorrect legal premise or are too conclusory and lacking in any detail to provide relief.  See Boyd v. Comm'r, Ala. Dep't of Corrs., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)); see also Blackledge, 431 U.S. at 74 (explaining presentation after declarations made at change of plea hearing "of conclusory allegations unsupported by specifics is subject to summary dismissal").  Petitioner has not satisfied the two-part Strickland standard of deficient performance and prejudice from Mr. Vines's actions at sentencing to

support a valid claim for relief, and none of the claims in Grounds One and Two form a valid basis for relief.

## III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 361), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 353), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 26th day of September, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA